**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

MAURICIO QUIJAY GARCIA,

      Petitioner,

    v.

JOHN MATTOS, *et al.*,

      Respondents.

Case No. 2:26-cv-01205-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Mauricio Quijay Garcia's (ECF No. 7) Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. For the following reasons, the Court grants the Amended Petition.

## I.   INTRODUCTION AND BACKGROUND

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Federal Respondents' Response to

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

Petitioner's Verified Amended Petition, ECF No. 10 [hereinafter, "Return"].[2]

Petitioner assert asserts he is a member of the certified class action pending before this Court in Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC (D. Nev.) ("Class Member"). See Am. Pet. at 4; see also Jacobo-Ramirez v. Noem, 823 F. Supp. 3d 1182 (D. Nev. 2026) (certifying class of undocumented noncitizens who are or will be subject to mandatory detention within the District of Nevada under the Executive Branch's reinterpretation of § 1225(b)(2)(A)). Petitioner seeks enforcement of his rights as a Class Member, which were adjudicated by this Court on March 30, 2026. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026) (granting partial summary judgment in favor of Class Members on their statutory and regulatory claims).

Through the Jacobo-Ramirez judgment, the Court declared that Class Members "are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1 & 1003.19" and "not subject to detention under 8 U.S.C. § 1225(b)(2)(A)." Id. at *33. The Court further set aside (i.e. vacated) the detention policies of the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ") which arose from the government's novel interpretation of § 1225(b)(2)(A), after finding them unlawful under the INA and its implementing regulations, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). See id. Those policies were captured in an internal memorandum issued to U.S. Immigration and Customs ("ICE") on July 8, 2025 titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" [hereinafter, "the July 8th Memo"] and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See id. at *8–9 (discussing the July 8th Memo, which set forth the "formal nationwide policy of DHS and DOJ," and Hurtado, which formally adopted the July 8th Memo policy within the Executive Office for Immigration Review ("EOIR") and legally binds all immigration courts).

---

[2] Respondent John Mattos, Warden of Nevada Southern Detention Center, filed a Response to Petitioner's First Amended Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioner and takes no position on the Petition's merits. See Mattos Return, ECF No. 11.

Petitioner seeks release from detention because Federal Respondents have failed to comply with § 1226(a), its implementing regulations, and the Jacobo-Ramirez judgment. See Am. Pet at 7–9. Petitioner also asserts his arrest and detention without appropriate procedures violates the Due Process Clause of the Fifth Amendment. See Am. Pet. at 4–9.  In response, the government disputes that Petitioner is a Jacobo-Ramirez Class Member, because Petitioner received a bond hearing before an immigration judge ("IJ") on March 3, 2026, and was denied bond. See Return at 1. The government further argues that the Petition should be denied as moot because of the bond hearing. See id. The government fully incorporates "its prior litigated positions regarding" § 1225(b)(2)(A), invokes no other statutory authority for Petitioner's detention, provides no response to Petitioner's due process claims, and does not assert any individualized justification for Petitioner's detention. See id.

As discussed below, the Court finds Petitioner is a Jacobo-Ramirez Class Member. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful under the INA and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the *pre-deprivation* process required under § 1226(a) violates his constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioner's unlawful detention and the government's defiance of the Jacobo-Ramirez judgment is immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring Federal Respondents to follow appropriate procedures in the event they seek to re-detain Petitioner under § 1226(a).

## II.    CLASS MEMBERSHIP

The Court begins with whether Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4.

The government argues Petitioner is not a Class Member because he received a bond hearing before an IJ on March 3, 2026, and was denied bond. See Return at 2, ECF No. 10. However, the government does not contend with the Jacobo-Ramirez Class definition, which is not conditioned on the receipt of a bond hearing before an IJ. Based on the undisputed verified factual allegations in the Petition, and the documentary evidence supplied by the parties, the Court finds that Petitioner satisfies the criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on February 22, 2026, and he remains detained. See Am. Pet. at 3, ECF No. 7; Return, Ex. A at 3–4 (DHS Form I-213 Record of Inadmissible Noncitizen), ECF No. 10-1 [hereinafter, "I-213"]. Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada. See Return, Ex. A at 6–8 (DHS Form I-862 Notice to Appear) [hereinafter, "NTA"] (ordering Petitioner to appear before an IJ in Las Vegas on March 23, 2026 for removal proceedings). Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See id. (NTA) (alleging Petitioner is "an alien present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents are detaining Petitioner under § 1225(b)(2)(A) and they do not assert that he is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally Return. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Am. Pet. at 3; Id., Ex. B at 3 (I-213), ECF No. 7-2.

Despite Federal Respondents' argument to the contrary, the fact of Petitioner's March 3, 2026 bond hearing does not affect his status as a Class Member or render his Petition moot. As to mootness, "the fundamentals of standing are well-known and firmly rooted in American constitutional law." Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC, 158 F.4th 1052, 1057 (9th Cir. 2025) (citation modified) (quoting FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024)). "Most basic among those principles is that a case or controversy must include (1) an

injury-in-fact, (2) caused by the defendant's acts, (3) that likely would be redressed by the requested judicial relief." Id. (citation modified). "These conditions 'must remain extant at all stages of review, not merely at the time the complaint is filed.'" Id. (citation modified) (quoting Decker v. Nw. Env't Def. Ctr., 568 U.S. 597, 609 (2013)). But "the burden of demonstrating mootness is a heavy one." Williams v. INS, 795 F.2d 738, 741 (9th Cir. 1986) (citation modified).

Federal Respondents argue without authority or analysis that the Petition is moot because Petitioner "Petitioner has already received a bond hearing." Return at 2. Federal Respondents have failed to carry their heavy burden of demonstrating mootness. First, their bare conclusion that this action is moot, without engaging with the actual nature of the relief requested in the Petition, and unsupported by a memorandum of points and authorities, is plainly insufficient. See Local Rule 7-2(d). Second, it is possible for the Court to grant Petitioner effectual relief. See Coastal Env't Rts. Found., 158 F.4th at 1057 (Regarding redressability, "when it is impossible for a court to grant any effectual relief whatever to the prevailing party[,]" there is nothing left for the court to do and the "case becomes moot.") (citation modified) (quoting Decker, 568 U.S. at 609). *Actual* receipt of *all* the relief to which the petitioner is entitled is the *sine qua non* of mootness. See Chen v. Allstate Ins. Co., 819 F.3d 1136, 1145 (9th Cir. 2016) (collecting cases). To be sure, Petitioner seeks more than a bond hearing like the one he received on March 3, 2026. The remedies he asks for are "immediate release," or in the alternative, a conditional writ requiring a "constitutionally adequate"[3] bond hearing within seven days, with the evidentiary burden shifted to the government to justify Petitioner's continued detention. See Am. Pet. at 8–9.

Petitioner further seeks *full* enforcement of the Jacobo-Ramirez judgment, which did not merely require that Class Members receive bond hearings before an IJ, but rather, requires *full compliance* with § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *31 ("Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting

---

[3] Petitioner specifically asserts that the March 3, 2026 bond hearing he was provided was constitutionally deficient because the IJ placed the evidentiary burden on him to disprove dangerousness, and then denied bond based on a "clearly erroneous" finding that he is dangerous solely due to a 2022 DUI conviction and a 2026 DUI misdemeanor arrest. Am. Pet. at 6–7.

and detaining any Class Member. If Defendants deny release on bond or conditional parole *after an initial custody determination*, Class Members are entitled to custody *redetermination(s)* before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.") (emphasis added). As discussed more fully below, see *infra*-Sections II.A; III, it is undisputed that Federal Respondents have not complied with 8 C.F.R. § 236.1, because they have not conducted an initial custody determination for Petitioner. Because the Court can grant the relief Petitioner requests—immediate release—to remedy Federal Respondents' violation of the Jacobo-Ramirez judgment and Petitioner's due process rights, the Petition is not moot.

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court. The declaratory judgment entered in favor of Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Federal Respondents—who have not filed an appeal in Jacobo-Ramirez—offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioner in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.") (citation modified). Thus, Petitioner was forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas proceeding, and the Court must reiterate its finding that his ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See

Jacobo-Ramirez, 2026 WL 879799, at *33.

### III.    DUE PROCESS

The government provides no response to Petitioner's claim that his detention without the procedures required under § 1226(a) violates due process. See generally, Return, ECF No. 10. Importantly, the classwide due process claim has not yet been litigated in Jacobo-Ramirez. See Jacobo-Ramirez, 2026 WL 879799, at *2 ("Plaintiffs also claim that the [the government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on those claims."). The Court thus turns to the merits of Petitioner's due process claim.

Class Members and similarly situated noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, 817 F. Supp. 3d. 1037, 1053–54 (D. Nev. 2025). The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citing Wong Yang Sung v. McGrath, 3339 U.S. 33, 48–51 (1950)); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Consequently, as well over a century of Supreme Court precedent establishes, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903); see also United States v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of

precedent admits of no exception: an alien who has entered the United States is guaranteed due process protections."). That is especially the case where a noncitizen's physical liberty is at stake, because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia,* the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without issuance of a notice to appear for removal proceedings, both of which must be signed and served by designated immigration officers; the requirement that an ICE officer with designated authority conduct an initial custody determination at the outset of detention, wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding" such that they can be released on bond and/or supervisory conditions, rather than detained; and the right to appeal an ICE officer's initial custody determination through a prompt hearing before an immigration judge ("IJ") based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at *6–7 (citing 8 C.F.R. §§ 236.1(c)(8); 236.1(d)(1); 287.5(d); 287.8(c)(2)(i)-(ii); 1003.19); quoting Rodriguez Diaz, 53 F.4th at 1196).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690). As a result, noncitizens like Petitioner are indiscriminately

arrested by ICE officers in the interior of the country and subjected to months of detention without pre-deprivation procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving them of their liberty.

Indeed, DHS and the DOJ's § 1225(b)(2)(A) detention policy, as articulated in the July 8th Memo, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation. See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8th Memo; citing 8 C.F.R. § 236.1(c)(8)). Despite the Court's vacatur of that policy as to Class Members on March 30th, see id. at *33, as Petitioner's circumstances illustrate, the government is still detaining Class Members without any pre-deprivation consideration, notice, or opportunity to be heard regarding whether detention is justified.[4] And the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to mandate the detention of millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," Jacobo-Ramirez, 2026 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da

---

[4] As explained in greater detail below, *infra*-Part III, Federal Respondents have recently confirmed that they are not conducting initial custody determinations or issuing Form I-286 notices of such determinations to any Class Members.

Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention," "compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held."). Many of these constitutional concerns are Petitioner's current reality.

As such, and as further illustrated below, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass indispensable *pre-deprivation* notice and an opportunity to be heard regarding the individualized basis for ICE's decision to detain a noncitizen, which is "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210. Petitioner's detention without those pre-deprivation protections violates his right to procedural due process.

### A. The Mathews Factors

To determine what process is due under the Constitution, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–07 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation modified).

On balance, these factors weigh heavily in favor of Petitioner. First, the private interest affected is Petitioner's paramount interest in his physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (freedom from imprisonment is "the most elemental of liberty interests") (citation

omitted); United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). That interest is especially weighty considering the lack of process Petitioner has received, and that was available to him, upon his arrest and at the outset of his detention. See Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received prior to and during his detention under § 1226(a), and the further process that was available to him, in weighing his private liberty interest). Unlike the detainee in Rodriguez Diaz who was afforded the full breadth of procedural protections under § 1226(a), Petitioner was afforded no pre-deprivation process at all with regards to ICE's determination that he must be detained pending final adjudication of his alleged removability.

Importantly, where physical liberty is at stake, the *pre-deprivation* process provided through the warrant and initial custody determination requirements under § 1226(a) is essential. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be *preceded* by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)); The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972) (where liberty is "implicated, the right to some kind of prior hearing is paramount."). Generally, a lack of pre-deprivation due process is only permissible in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379 (1971). Even so, a "full hearing must be available promptly after the temporary deprivation occurs." Barry v. Barchi, 443 U.S. 55, 72 (1979) (Brennan, J., concurring in part). The government has identified no extraordinary circumstances that would justify the lack of pre-deprivation process here. Thus, the fact that Petitioner had a post-deprivation bond hearing before an IJ does not diminish Petitioner's liberty interest in meaningful pre-deprivation process.

Second, the risk of an erroneous deprivation of liberty is intolerably high under the government's current procedures which do not require any pre-deprivation initial custody determination that Petitioner's detention serves its constitutionally recognized regulatory goals.

See Mathews, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). A "relatively immutable" principle of due process is that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Greene v. McElroy, 360 U.S. 474, 496 (1959). The initial custody determination requirement under § 1226(a) not only ensures that the government has a factual basis for determining that the noncitizen's pre-adjudicative civil detention is necessary; it also requires the *disclosure* of that factual basis to the detainee. Accordingly, when a detainee seeks to *appeal* the government's decision to detain them through a custody *redetermination* hearing before an IJ, they have already been provided advanced notice of the government's determination, and the evidence underlying it, such that the hearing presents a prompt opportunity to disprove and rebut that evidence. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 4224 U.S. at 345–46 (noting the importance of "full access to all information relied upon by the state agency . . . Opportunity is then afforded the recipient to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information in his file as well as the correctness of the agency's tentative conclusions.").

Under the government's current procedures, however, because Petitioner was not afforded an initial custody determination, the subsequent bond hearing he was provided required him to *guess* the basis for ICE's determination that he is dangerous or a flight risk and then disprove it. Under BIA precedent, at a custody redetermination hearing the noncitizen bears the evidentiary burden of overcoming the presumption that detention is justified. See In re Guerra, 24 I. & N. Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to *disprove* dangerousness or flight risk to the detainee). In the absence of an initial custody determination, then, this post-deprivation hearing lacks fundamental fairness, because the detainee has no notice regarding the government's allegations against him, and no meaningful opportunity to prepare to disprove those allegations or

- 12 -

present mitigating evidence. Cf. Carlson v. Landon, 186 F.2d 183, 189 (9th Cir. 1950) (finding a detainee should not be "burdened by the impossible task of imagining and refuting causes which may have had a bearing" upon the immigration official's decision to detain him). Thus, a post-deprivation bond hearing before an IJ is structurally inadequate to cure the risk of erroneous deprivation created by the lack of pre-deprivation process under the government's current procedures.

Nor is Petitioner provided with pre-deprivation notice or a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens who are arrested within the interior of the country (like Petitioner) and not while arriving[5] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a pre-deprivation hearing and determination by ICE that detention is justified based on Petitioner's individual circumstances, written notice of that determination, and a prompt opportunity to appeal that determination in an adversarial evidentiary hearing before an IJ, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures significantly reduce the risk of

---

[5] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8th Memo).

erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who pose a danger to their community or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation modified). Similarly, the public interest is served by the procedures under § 1226(a) which limit the "substantial societal costs" that "unnecessary detention imposes" by separating "families" and removing "from the community breadwinners, caregivers, parents, siblings, and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention without the pre-deprivation process required under § 1226(a) violates procedural due process and is, therefore, unconstitutional.

## IV.   REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months of arbitrary detention in violation of his statutory and constitutional rights, as well as the Jacobo-Ramirez judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

First, the Court finds Petitioner's detention without a warrant and initial custody

determination was void *ab initio* under § 1226(a) and its implementing regulations. Federal Respondents have not submitted a Form I-286 Initial Custody Determination or Form I-200 Administrative Warrant as to Petitioner, and they have certified that such documents are not in their possession, custody, or control. See Return at 2, ECF No. 10. The Court finds the government's failure to produce evidence of a lawfully executed and served administrative warrant or individualized pre-deprivation custody determination is a concession that he was not afforded those procedures, which are mandated by statute, regulation, and due process, upon his arrest and initial detention. See Jacobo-Ramirez, 2026 WL 879799, at *31.

On that basis, the Court finds Petitioner's detention "was unlawful from its inception because ICE detained [him] under the wrong statute and without affording [him] any notice or process whatsoever, much less the procedures due under Section 1226(a)." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis and finding a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"); see also Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,]" and in the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was the appropriate remedy) (citation modified). In the absence of a warrant and initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified). Immediate release is thus the appropriate remedy for Federal Respondents' "detain first, justify later" approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process.

Second, the Court finds immediate release is the appropriate remedy for Federal Respondents' ongoing defiance of the Jacobo-Ramirez judgment. The Court issued its declaratory

judgment and vacated ICE's internal policy of not issuing initial custody determinations to Class Members on March 30, 2026. See Jacobo-Ramirez, 2026 WL 879799, at *33. Petitioner did not receive an initial custody determination; rather ICE applied its vacated policy to him and detained him without consideration of his dangerousness or flight risk. Over three months have passed since the Jacobo-Ramirez judgment, yet ICE has not conducted an initial custody determination for Petitioner. Put simply, months after a binding judgment that (1) declared Petitioner's detention illegal and (2) vacated the agency policy underlying his arrest and detention, the government has taken no action to cure its unlawful conduct.

In fact, in Jacobo-Ramirez, Federal Respondents have recently confessed that they are not conducting initial custody determinations or issuing Form I-286 Notices of Initial Custody Determinations to Class Members, even though they acknowledge the declaratory judgment and vacatur require them to do so. See Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 17:22–20:10, June 1, 2026, ECF No. 157. The Form I-286 Notice is especially significant because it is served on the detainee at the outset of detention and provides the formal mechanism—a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.* bond hearing) before an IJ. See id. Importantly, then, by refusing to issue I-286 Notices, Federal Respondents are depriving Class Members like Petitioner of the ability to immediately and efficiently request a meaningful bond hearing in immigration court. As Federal Respondents have explained, the only process currently available for a detained Class Member to request a bond hearing is by mailing a written request to EOIR from their detention center. See id. at 22:17–30:3. Class Members receive no instructions regarding how to do so, and the record does not even establish that they are told of this alleged possible means of seeking a bond hearing. See id. But, if ICE had conducted an initial custody determination and served the Form I-286 Notice upon Petitioner's arrest consistent with 8 C.F.R. § 236.1, he could have immediately requested a bond hearing by simply checking a box.

Moreover, as discussed above, see *supra*-Part III.A, a custody *redetermination* hearing before an IJ without an *initial* custody determination by ICE, flouts the regulatory scheme and due process, which delegates authority to IJs to hear "*[a]ppeals* from custody decisions" upon an

application by the detainee "*[a]fter* an initial custody determination" by a designated officer. 8 C.F.R. § 236.1(d) (emphasis added). Accordingly, since ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations, or, by extension, the Jacobo-Ramirez judgment.

The only justification Federal Respondents have provided for their noncompliance with the Jacobo-Ramirez judgment is that it "has no coercive effect." Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 45:5–51:10, June 15, 2026, ECF No. 167. Note, Federal Respondents do not assert that their continued enforcement of a policy that has been vacated under the APA, and disregard for Petitioner's adjudicated rights as a Class Member, is legally defensible. Instead, they are unabashedly exploiting the fact that, absent coercive classwide relief, the Court cannot coerce their compliance on a classwide basis through its contempt power. Consequently, in this, and countless other habeas matters filed by Jacobo-Ramirez Class Members, the government, which has yet to file an appeal in Jacobo-Ramirez, is disturbing the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). More fundamentally, the government is rebelling against the basic principle underlying our constitutional order that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

Despite Federal Respondents' open defiance, it is true that the declaratory judgment establishes Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). Similarly, this Court's vacatur under the APA "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified). In the absence of the threat of contempt, Federal Respondents have made clear that they will not conform their conduct to the Jacobo-Ramirez judgment voluntarily. The consequence is not that the lawfulness of Petitioner's detention is

- 17 -

uncertain—this Court has already adjudicated it—but that Petitioner requires an appropriate remedy in this habeas proceeding, backed by the Court's contempt power, to give effect to his clearly established rights as a Class Member.

Finally, in fashioning the appropriate remedy, the Court considers the fact that Federal Respondents' disregard for its orders is not unique to the Jacobo-Ramirez judgment. Rather, they have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, apparently undeterred by the fact that, in contrast to the non-coercive nature of the declaratory judgment, those orders *are* backed by the Court's contempt power. These violations include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[6] "By violating this Court's orders, Respondents are undermining their credibility and the rule of

---

[6] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (despite ICE being given 24 hours to release Petitioner, they failed to provide advanced notice of the petitioner's release, and the petitioner could not be located by his counsel); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. Id.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering another bond hearing for Petitioner. While ordering a new bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances the Court declines to prolong Petitioner's unlawful detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms Petitioner has suffered. Zheng v. Rokosky, --- F. Supp. 3d. ---, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's Orders and due process.[7]

_____

[7] In related habeas matters where the Court has issued a conditional writ, providing Federal Respondents an opportunity to cure the petitioner's unlawful detention through a constitutionally adequate bond hearing, DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (enforcing conditional writ after Federal Respondents asserted 8 U.S.C. § 1226(c) did not apply to Petitioner in response to his habeas petition, and then the immigration court denied Petitioner release on bond under § 1226(c) after a Court-ordered bond hearing); Cruz Perez v. Blanche, No. 2:26-CV-00315-RFB-DJA, Order Enforcing Writ, ECF No. 31 (D. Nev. May 15, 2026) (finding both DHS and the IJ openly defied the Court's requirement that the evidentiary burden be shifted to the government at the Court-ordered bond hearing, and that DHS' unilateral imposition of ankle monitoring defied agency regulations and the Court's order); Salazar-Lopez v. Mullin, No. 2:26-CV-00871-RFB-MDC, 2026 WL 1414066 (D. Nev. May 20, 2026) (finding the IJ failed to address the requirement that the evidentiary burden be borne by the government at the Court-ordered bond hearing); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's bond hearing).

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event they seek Petitioner's re-detention under § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks Petitioner's re-detention under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's conditional writ ordering a bond hearing "under the Due Process Clause" wherein the government was required "to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing" to continue the petitioner's detention) (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of law and Petitioner's rights to date.

## V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner Mauricio Quijay Garcia's Amended Petition for Writ of Habeas Corpus (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON PERSONAL RECOGNIZANCE** on **July 9, 2026** between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and

convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **July 10, 2026** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

**The Clerk of Court is kindly instructed** to update the docket and case name to reflect the Respondents named in the (ECF No. 7) Amended Petition, enter judgment accordingly, and close this case.

**IT IS FURTHER ORDERED** that the hearing set for July 9, 2026 at 9:00 a.m. in this matter is **VACATED**.

The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** July 8, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**